IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LAIRD NEWMAN,<br><br>                  Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>                  Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case #4:19-cv-00023-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Laird Newman's appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security income. The Court held oral arguments on November 13, 2019. Having considered the parties' arguments, the record, and relevant case law, the Court will reverse and remand the administrative ruling.

## I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3] If

---

[1] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[3] *Id.* at 1009–10.

1

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[5] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[6]

## II. BACKGROUND

### A. PROCEDURAL HISTORY

Plaintiff applied for Social Security Disability and Disability Insurance Benefits as well as Social Security Income on May 28, 2015, alleging disability beginning May 28, 2015.[7] Plaintiff's initial application was denied on January 8, 2016, and upon reconsideration on March 14, 2016.[8] At Plaintiff's request, ALJ Cynthia R. Hoover held an administrative hearing on March 19, 2018.[9] On April 11, 2018, ALJ Hoover issued her decision denying Plaintiff benefits.[10] On February 5, 2019, the Appeals Council denied Plaintiff's request for review.[11] Plaintiff then filed the present appeal.

### B. MEDICAL HISTORY

Plaintiff alleges disability due to at least HIV infection, neuropathy, fatigue, malaise, headaches, depression, panic disorder, posttraumatic stress disorder, acid reflux, and an upper

---

[4] *Richardson*, 402 U.S. at 390.

[5] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[7] Tr. 175–87.

[8] *Id.* at 73–74, 105–06.

[9] *Id.* at 13.

[10] *Id.* at 13–24.

[11] *Id.* at 1–7.

intestinal ulcer.[12]  Here, the issues revolve around whether the ALJ properly evaluated evidence of Plaintiff's fatigue and neuropathy as found by Drs. Rosado-Santos and Renner.

### *Dr. Rosado-Santos*

On December 5, 2014, Dr. Rosado-Santos saw Plaintiff for a scheduled medical visit related primarily to Plaintiff's HIV.[13]  Dr. Rosado-Santos's notes indicate Plaintiff exhibited no neurological problems and had normal range of motion.[14]  Plaintiff reported fatigue, which began in January 2012.[15]  Dr. Rosado-Santos saw Plaintiff again on March 5, 2015, again to treat Plaintiff's HIV.[16]  Dr. Rosado-Santos again noted that Plaintiff complained of fatigue but noted no neurological problems and found Plaintiff exhibited normal range of motion.[17]  Dr. Rosado-Santos saw Plaintiff a third time on September 11, 2015.[18]  Dr. Rosado-Santos's notes indicate Plaintiff had worsening numbness in both feet, which caused pain at nighttime.[19]  The notes indicate Plaintiff had this problem for approximately two years, but it had been worsening, "even while his HIV [was] well control[l]ed."[20]  Dr. Rosado-Santos prescribed Plaintiff Gabapentin to manage the symptoms of his neuropathy.[21]

---

[12] *Id.* at 285.
[13] Tr. 305.
[14] *Id.* at 305, 307, 353.
[15] *Id.*
[16] *Id.* at 313
[17] *Id.* at 313, 315.
[18] *Id.* at 319.
[19] *Id.* at 322.
[20] *Id.* at 322, 326.
[21] *Id.* at 326.

During 2016 and 2017, Dr. Rosado-Santos saw Plaintiff eight times, approximately every three months.[22] Plaintiff complained of fatigue during all but one of these visits.[23] Dr. Rosado-Santos noted neurological problems during four exams: headaches during the December 8, 2016, and September 13, 2017 exams; and neuropathy during the June 8, 2017, and December 13, 2017, visits.[24] He noted no neurological issues during the other four examinations.[25] Dr. Rosado-Santos reported normal musculoskeletal functioning in all exams except the following: muscle aches in December 2016; decreased range of motion resulting from a recent shoulder injury on March 9, 2017; and muscle-plus-joint pain in June 2017.[26]

Dr. Rosado-Santos completed a questionnaire addressing Plaintiff's functional limitations at the request of Plaintiff's counsel.[27] Dr. Rosado-Santos indicated Plaintiff's repeated manifestations of HIV affected his musculoskeletal, neurological, and mental health, causing Plaintiff "chronic, persistent general weakness/fatigue."[28] Dr. Rosado-Santos indicated he did not know the maximum weight Plaintiff could lift or carry.[29] But, he opined Plaintiff could never kneel, crawl, or crouch, and only occasionally climb ladders or stairs and perform overhead work.[30]

---

[22] Tr. 378–80.

[23] *Id.* at 390, 434, 461, 500, 550, 601, 712–13; *see* 680–98.

[24] *Id.* at 500, 601, 606, 694, 713.

[25] *See id.* at 390–91, 437, 461, 548.

[26] *Id.* at 500, 548, 601; *see id.* at 391, 437, 464,

[27] *Id.* at 330–37.

[28] *Id.* at 333–34.

[29] *Id.* at 336.

[30] *Id.* at 336–37.

Dr. Rosado-Santos also completed a statement regarding Plaintiff's physical limitations, again at the request of Plaintiff's counsel.[31] Dr. Rosado-Santos indicated Plaintiff had HIV infection, severe depression with anxiety, neuropathy, and chronic headaches.[32] He noted that Plaintiff's HIV was stable, but Plaintiff had not responded well to treatment for depression or neuropathy.[33] Dr. Rosado-Santos opined Plaintiff could lift less than ten pounds, stand or walk less than two hours of an eight-hour workday, and sit less than two hours. Dr. Rosado-Santos noted Plaintiff could perform a full-time job less than 50% as efficiently as an average worker, would be absent from work four days or more per month, away from the work area 20% or more of the day, and his attention and concentration for simple tasks would be compromised 20% or more of the day.[34] Dr. Rosado-Santos opined Plaintiff could not work full-time based on his "mental health diagnosis" and "neuropathy – (lower extremities)."[35]

### *Dr. Renner*

On December 17, 2017, Dr. Renner saw Plaintiff who complained of chronic headaches and peripheral neuropathy.[36] Notes from Dr. Renner's chart indicate Plaintiff exhibited signs of peripheral neuropathy.[37] Dr. Renner's notes indicate Plaintiff exhibited abnormal (antalgic) gait, station (as shown by an abnormal Romberg test response), atrophy in his foot muscle, abnormal

---

[31] Tr. 376–77.
[32] *Id.* at 376.
[33] *Id.*
[34] *Id.* at 376–77.
[35] *Id.* at 377.
[36] *Id.* at 750.
[37] *Id.* at 762–63.

5

reflexes, and sensory deficits in both knees.[38] During his visit with Dr. Renner, Plaintiff was unable to stand on his tiptoes or heels.[39]

Dr. Renner saw Plaintiff a second time on January 30, 2018.[40] Again, Dr. Renner's notes indicate Plaintiff suffered peripheral neuropathy and headaches, which Dr. Renner attempted to treat, in part, with Gabapentin.[41]

Dr. Renner completed a statement regarding Plaintiff's physical limitations, at the request of Plaintiff's counsel.[42] Dr. Renner opined that Plaintiff's worsening neuropathy prevented Plaintiff from being on task for 20% or more of an eight-hour workday and reduced Plaintiff's ability to lift, stand or walk, and sit.[43] Dr. Renner noted Plaintiff had atrophy in the muscle in his foot, vibratory loss in both feet, high arches, and an unstable antalgic gait.[44] Dr. Renner believed Plaintiff's attention and concentration for simple tasks would be compromised 5% or less of the day.[45] Dr. Renner opined Plaintiff could perform a full-time job less than 50% as efficiently as an average worker, would be absent from work four days or more per month, and away from the

---

[38] Tr. 761–62.
[39] *Id.* at 762.
[40] *Id.* at 786.
[41] *Id.* at 787–88.
[42] *Id.* at 795–96.
[43] *Id.*
[44] *Id.* at 795.
[45] *Id.*

work area 20% or more of the day.[46] Finally, Dr. Renner indicated Plaintiff could not work full-time, but did not offer any explanation for that opinion.[47]

**C. HEARING TESTIMONY**

At the hearing, Plaintiff testified that he obtained an associate's degree in general education and later became a certified nursing assistant ("CNA"). Over the last fifteen years Plaintiff explained he worked, at various times, as an assistant for an accounting firm, as an assistant for an auditing firm, and as a CNA for several health and assisted-living facilities.[48]

Plaintiff testified he drives to retrieve mail and to take his parents to doctors' appointments.[49] He prepares his own meals, does laundry, helps with grocery shopping, watches television, and browses the Internet.[50] Plaintiff testified he has difficulty caring for himself and completing tasks.[51] He frequently takes naps in both mornings and afternoons.[52] Plaintiff testified he is no longer able to engage in his former hobbies including rodeos and country-western dancing.[53] He no longer socializes with friends.[54]

---

[46] *Id.* at 796.
[47] *Id.*
[48] Tr. 37.
[49] *Id.* at 40, 42.
[50] *Id.* at 41.
[51] *Id.* at 38.
[52] *Id.* at 42.
[53] *Id.* at. 42.
[54] *Id.* at 41.

7

Plaintiff further testified he takes medication for his depression, HIV, headaches, and neuropathy.[55] He also attends therapy once a month.[56]

**D. THE ALJ'S DECISION**

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, May 28, 2015.[57] At step two, the ALJ found Plaintiff suffered from two severe impairments: affective disorder and anxiety disorder.[58] The ALJ also found Plaintiff suffered non-severe physical impairments: positive HIV status, migraine headaches, lower extremity numbness, and gastrointestinal ailments including acid reflux disease and gastritis/ulcer.[59] At step three, the ALJ found that Plaintiff did not meet the criteria for any listed impairment.[60] The ALJ then found that Plaintiff could perform work at all exertional levels, but was limited to simple repetitive tasks; would be able to interact with the general public, supervisors an peers only occasionally; and needed a low stress environment.[61] At step four, the ALJ found Plaintiff could not perform any past relevant work.[62] At step five, the ALJ found

---

[55] *Id.* at 39.
[56] *Id.* at 40.
[57] Tr. 15.
[58] *Id.*
[59] *Id.* at 16.
[60] *Id.* at 16–17.
[61] *Id.* at 17–22.
[62] *Id.* at 22–23.

8

Plaintiff was not disabled because he could perform work that existed in significant numbers in the national economy.[63]

### III.  DISCUSSION

As explained below, the court will remand the case because the ALJ incorrectly stated Dr. Renner's notes provided no basis for the functional limitations Dr. Renner ascribed to Plaintiff. The court, however, declines to remand for other reasons.

### A.  THE ALJ COMMITTED NO HARMFUL ERROR AT STEP TWO

Although the ALJ found Plaintiff suffered severe mental impairments and proceeded to Step Five, Plaintiff argues the ALJ erred by finding Plaintiff suffered no severe *physical* impairments at Step Two.[64] The ALJ found Plaintiff's physical impairments were non-severe because they did not cause Plaintiff to suffer any identifiable functional limitations.[65] Plaintiff contends this finding is erroneous because objective testing showed Plaintiff had limitations stemming from neuropathy and fatigue as shown by Plaintiff's testimony, reports to physicians, and the opinions of Drs. Rosado-Santos and Renner.[66]

The Commissioner argues reversal is not necessary because the ALJ's findings at Step Two are supported by substantial evidence or, alternatively, the alleged error is harmless.[67] The Commissioner contends substantial evidence shows Plaintiff's physical impairments were not severe because they were controlled with medication and were not expected to last more than

---

[63] Tr. 23–24.

[64] Plaintiff's Br. at 7 (ECF No. 18).

[65] *Id.* (citing R. at 16).

[66] *Id.* at 7–9.

[67] Def.'s Br. at 5 (ECF No. 21).

9

twelve months.[68]  The Commissioner also contends that any error at Step Two became harmless when the ALJ continued beyond Step Two and considered Plaintiff's non-severe physical impairments.[69]

Plaintiff fails to identify any harmful error at Step Two.  "As long as the ALJ finds one severe impairment, the ALJ . . . must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."[70]  Thus, Plaintiff's argument that the ALJ erred at Step Two fails because the ALJ did not conclusively deny Plaintiff benefits at Step Two.  Thus, the ALJ committed no harmful error at Step Two.

Nonetheless, the ALJ must have addressed Plaintiff's non-severe physical impairments (neuropathy and fatigue) when determining Plaintiff's RFC.   That is, an "ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not."[71]  The ALJ did, in fact, address Plaintiff's fatigue and neuropathy when crafting his RFC.  For example, the ALJ considered Plaintiff's testimony about his fatigue, neuropathy and the resulting numbness in his legs.[72]  The ALJ considered the treatment Plaintiff received for his neuropathy, which the ALJ considered minimal.[73]  The ALJ also afforded great weight to a DDS physician who opined

---

[68] *Id.* at 6–12.

[69] *Id.* at 12–13.

[70] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).  Put otherwise, an alleged error at step two is harmless where the ALJ concludes a claimant "could not be denied benefits conclusively at step two and proceed[s] to the next step of the evaluation sequence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

[71] *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013).

[72] Tr. 18.

[73] *Id.* at 19.

Plaintiff's fatigue should not prevent him from working in "less demanding positions."[74] And, the ALJ addressed Dr. Rosado-Santos' opinions about Plaintiff's fatigue and neuropathy.[75] While the ALJ could have given greater weight to much of this evidence, it is not the court's job to substitute its judgment.

Finally, it is worth noting that Plaintiff's argument on this point is redundant with his second argument. Plaintiff cites Drs. Rosado-Santos's and Renner's opinions[76] to support his claims of fatigue and neuropathy. The ALJ discounted Drs. Rosado-Santos' and Renner's opinions, which Plaintiff challenges with his second argument, addressed below. Plaintiff also cites his own testimony to support his claims of limitations stemming from fatigue and neuropathy. Yet, the ALJ found Plaintiff overstated the intensity, persistence and limiting effects of his symptoms.[77] Plaintiff does not challenge the ALJ's determination that Plaintiff overstated his symptoms. Accordingly, the court finds an absence of harmful error at Step Two.

### B. THE ALJ ERRED IN EVALUATING DR. RENNER'S ASSESSMENTS

Plaintiff argues the ALJ erred in evaluating the opinions of Drs. Renner and Rosado-Santos because the ALJ incorrectly stated both opinions lacked foundation in the record and further discounted Dr. Renner's opinions because he saw Plaintiff only twice.

The Commissioner responds that Plaintiff's argument about the medical-opinion evidence reflects only disagreement with the ALJ's conclusions, which are supported by

---

[74] *Id.*

[75] Tr. 21. While the ALJ's treatment of Dr. Rosado-Santos' opinions raises other questions, those are best addressed as part of the analysis below, rather than at Step Two.

[76] *See* ECF No. 18 at 8 (citing Tr. 39, 333, 762, 795).

[77] Tr. 18.

11

substantial evidence. The Commissioner contends the ALJ provided good reasons for discounting the treating-physician opinions.

The court finds that the ALJ did not provide good reasons, supported by substantial evidence, to discount Dr. Renner's opinions. The Commissioner must provide good reasons for the weight the ALJ assigns to a treating physician's opinion. Further, such reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight."[78] If the reasons provided misstate the record, those reasons are not supported by substantial evidence.[79]

### *Dr. Renner*

The ALJ erred in her analysis of Dr. Renner's opinion by affording "little to no weight" because, in part, Dr. Renner's chart notes provided "no foundation for his assessments."[80] This statement is not correct because Dr. Renner's chart notes discuss Plaintiff's neuropathy and symptoms related to that condition, which could explain the functional limitations Dr. Renner ascribed to Plaintiff.

Dr. Renner opined that Plaintiff's worsening neuropathy prevented Plaintiff from being on task for 20% or more of an eight-hour workday and reduced Plaintiff's ability to lift, stand or

---

[78] *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

[79] *Id.* at 1121; *see, e.g.*, *Alexander v. Barnhart*, 74 F. App'x 23, 26–27 (10th Cir. 2003) (finding that a misstatement of a treating source's statements "cannot stand as substantial evidence . . . [or] suffice to meet the Commissioner's requirements for evaluating opinion evidence, which require that '[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.'").

[80] Tr. 22.

12

walk, and sit.[81] The ALJ stated Dr. Renner's chart notes contained "no foundation" for these assessments. The ALJ's statement does not accurately reflect the record. Dr. Renner's chart notes indicate Plaintiff suffered peripheral neuropathy.[82] Dr. Renner's notes indicate Plaintiff exhibited abnormal (antalgic) gait, station (as shown by an abnormal Romberg test response), atrophy in his foot muscle, abnormal reflexes, and sensory deficits in both knees.[83] During his visit with Dr. Renner, Plaintiff was unable to stand on his tiptoes or heels.[84] These symptoms provide at least some basis for Dr. Renner's opinions regarding Plaintiff's functional limitations stemming from peripheral neuropathy. Thus, the ALJ's statement that there is "no foundation" for Dr. Renner's assessments is inaccurate. As discussed below, there are circumstances in which this type of misstatement constitutes merely harmless error. Yet here, the ALJ's entire evaluation of Dr. Renner's opinion--an opinion the ALJ acknowledges is from a treating source-- is one sentence long and contains this inaccurate evaluation of the record. Thus, the court finds that the error in the ALJ's single statement regarding Dr. Renner's opinion places the ALJ's decision beyond meaningful review and the case must be remanded.[85]

Also, the Commissioner attempts to salvage the ALJ's opinion by noting that Dr. Renner offered his opinion in 2018 and indicated he did not know whether Plaintiff's condition had

---

[81] *Id.* at 795–96.

[82] *Id.* at 762–63, 787–88.

[83] *Id.* at 761–62.

[84] *Id.* at 762.

[85] *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007); *Brown v. Comm'r of Soc. Sec. Admin.*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

lasted since at least May 2015.⁸⁶ Notwithstanding Dr. Renner's lack of familiarity with the history of Plaintiff's neuropathy, there is evidence in the record that Plaintiff suffered neuropathy in May 2015 and earlier, including Dr. Rosado-Santos's evaluation and treatment notes.⁸⁷ Moreover, while the Commissioner's argument has some logical appeal and provides a plausible hypothetical basis for the ALJ to discount Dr. Renner's opinion, the ALJ did not offer this as a basis for discounting the opinion. Instead, the ALJ stated that Dr. Renner's assessment that Plaintiff's physical, neuropathy-caused, limitations had "no foundation" in Dr. Renner's chart notes. That statement is simply inaccurate.

### *Dr. Rosado-Santos*

Plaintiff makes nearly identical arguments about the ALJ's analysis of Dr. Rosado-Santos's opinions, but the ALJ's analysis is sufficiently thorough that any error is harmless. Plaintiff contends the ALJ erred when she "stated that there was no rationale for [Dr. Rosado-Santos's] assessed limitations."⁸⁸ Unlike her analysis of Dr. Renner's opinions, the ALJ's evaluation of Dr. Rosado-Santos's opinions spans over one page of her decision and provides a detailed explanation for the ALJ's evaluation of Dr. Rosado-Santos's opinions. For example, the ALJ indicates she afforded Dr. Rosado-Santos's opinions lesser weight for the following reasons: he opined using checked boxes without any supporting explanation; he had knowledge of Plaintiff's physical abilities that seemed inconsistent; he offered opinions about the severity of Plaintiff's HIV infection that were not supported by the medical records; he suggested Plaintiff

---

⁸⁶ Tr. 795.

⁸⁷ *See* Tr. 326, 376.

⁸⁸ *E.g.* Pl.'s Br. At 11; Pl.'s Reply at 5.

14

suffered cognitive dysfunction when the neuropsychological examiner found none; and his own treatment notes did not tend to support the functional limitations he ascribed to Plaintiff.[89]

Based on the ALJ's lengthy and detailed discussion of Dr. Rosado-Santos's opinions, Plaintiff's argument appears to be more semantic than practical. The ALJ may have been incorrect to say Dr. Rosado-Santos failed to provide *any* rationale for his assessed functional limitations because the Dr. Rosado-Santos did provide *some* rationale. Nonetheless, the ALJ found Dr. Rosado-Santos's proffered justifications lacking for the reasons just discussed. The court finds no harmful error in what appears to be an exaggerated statement about the lack of support for Dr. Rosado-Santos's opinions. Notwithstanding the overstatement, substantial evidence supports the ALJ's good reasons for discounting Dr. Rosado-Santos's opinions.

Nonetheless, while the court elects not to remand the case based on the ALJ's analysis of Dr. Rosado-Santos's opinions, the court notes one troubling statement in the ALJ's opinion, which she remains free to re-evaluate on remand. The ALJ criticizes Dr. Rosado-Santos for failing to connect Plaintiff's "mental health diagnosis" with his reduced ability to lift or capacity to sit. The ALJ's statements on this matter suggest the ALJ overlooked Plaintiff's neuropathy, or treats it as a purely mental issue with no physical effect. The ALJ stated:

> Dr. Rosado-Santo's [sic] explanation [for functional limitations he ascribed to Plaintiff] was only "due to his mental health diagnosis [and] neuropathy-(lower extremities)." Dr. Rosado-Santos fails to connect "mental health diagnosis" with, for example, the ability to lift less than 10 pounds, or sit less than 2 hours.[90]

---

[89] Tr. 20–22.

[90] Tr. 21 (third alteration original) (citation omitted).

15

The ALJ appears to logically assume a mental-health issue will not cause problems with lifting or prolonged sitting. Nonetheless, neuropathy and its related muscle deterioration could explain both functional limitations. It is unclear from these two sentences why the ALJ believes Plaintiff's neuropathy could not possibly cause problems with lifting or prolonged sitting. The ALJ may have treated Plaintiff's neuropathy as a mere mental-health issue with no physical effect, which is not supported by the record. It is also possible the ALJ rejected neuropathy as a cause of these limitations because she previously discounted evidence in the record related to that condition. Nonetheless, that analysis may change with fresh consideration of Dr. Renner's opinions. Accordingly, the court simply notes that it may be helpful for the ALJ to also consider clarifying these statements.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that the ALJ's decision is REVERSED AND REMANDED for the purposes of conducting additional proceedings as set forth herein.

DATED this 05th day of December, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge